UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

St. Paul Warehouse Employees
Welfare Fund, and its Trustees,

        Plaintiffs,

   v.                               **MEMORANDUM OPINION AND ORDER**
                                           Civ. No. 07-235 ADM/AJB

SPS Companies, Inc.,

        Defendant.

_____

Mitchell W. Converse, Esq., Jensen, Bell, Converse & Erickson, P.A., St. Paul, MN, argued on behalf of Plaintiffs.

Richard A. Ross, Esq., Fredrikson & Byron, P.A., Minneapolis, MN, argued on behalf of Defendant.
_____

## I. INTRODUCTION

On November 29, 2007, the undersigned United States District Judge heard oral argument on Defendant SPS Companies, Inc.'s ("SPS") Motion for Summary Judgment [Docket No. 13]. In their Complaint [Docket No. 1], Plaintiffs St. Paul Warehouse Employees Welfare Fund, and its Trustees (collectively, "the Fund"), allege that SPS violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, by failing to make certain contributions required by a collective bargaining agreement ("CBA"). For the reasons set forth below, SPS's Motion for Summary Judgment is granted in part and denied in part.

## II. BACKGROUND[1]

The Fund is a multiemployer employee welfare benefit fund under ERISA. 29 U.S.C. § 1003(a); Def.'s Mem. [Docket No. 15] at 2; Pls.' Opp'n [Docket No. 20] at 2. The Fund provides a plan that includes health, dental, short term disability, and life insurance benefits for employees covered by a CBA between an employer and the International Brotherhood of Teamsters Local 120 (the "Union"). Ross Aff. [Docket No. 16] Ex. A.[2]

SPS distributes plumbing, heating, ventilation, and air conditioning products. Gross Aff. [Docket No. 17] ¶ 2. SPS has multiple branches and approximately 250 employees. Id.

**B.     The St. Paul Collective Bargaining Agreement**

Since September 27, 1985, SPS and the Union have entered into a series of CBAs establishing the wages, hours, and conditions for employees at SPS's St. Paul, Minnesota, branch. Ross Aff. Ex. E. The most recent CBA in the record is dated September 2, 2004. Ross. Aff. Ex. C at 12. The 2004 St. Paul CBA expired on March 14, 2007. Id. Ex. C. The parties agree that for the purpose of SPS's Motion for Summary Judgment, the language in Article 10 of the 2004 St. Paul CBA is substantively identical to Article 10 of the predecessor CBAs (the CBAs executed between 1985 and 2004 are collectively referred to as the "St. Paul CBA"). Def.'s Mem. at 3; Pls.' Opp'n at 2. Article 10 of the St. Paul CBA obligates SPS to pay the entire amount of an active full-time employee's monthly medical insurance premium up to a

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

[2] Before 2003, the International Brotherhood of Teamsters Local 503 represented SPS's employees. Raverty Dep. (Ross Aff. Ex. D) at 10. In 2003, Teamsters Local 503 merged with the Union. Id. For convenience, the Court will only refer to the Union.

specified limit. Ross. Aff. Ex. C at 12; see also Ross Aff. Ex. E at 10. SPS and the employee each pay half of the portion of the medical insurance premium that exceeds the specified limit. Ross. Aff. Ex. C at 12. Article 10 provides that SPS pays the entire amount of a full-time employee's premium for dental, life, accidental death and dismemberment, and short term disability insurance. Id. Article 10 concludes with a paragraph regarding employees on injury leave and retired employees:

> The insurance premium will be paid for by the Employer for six months for employees who are on leave because of an injury either on or off the job. Effective April 1, 1987, early retirees may remain in the St. Paul Warehouse Employees Welfare Fund Group hospitalization plan until their 65th birthday, or until they are eligible for Medicare, whichever is first. The coverage for such early retirees shall include their dependents, and shall be the same as though they had remained active employees, except that their coverage shall not include dental or vision coverage. An early retiree's dependents shall be defined and covered on the same basis as though the early retiree was still actively employed, except that there shall be no dental or vision coverage for them.

Id. at 12-13.

Although Article 10 does not expressly obligate SPS to pay premiums for retired employees,[3] SPS began making premium payments on behalf of retired employee Pat Kirby in 2000, and on behalf of retired employees Richard Lynaugh and Bob Norsten in 2005. Gross Aff. ¶ 5; Gross Dep. (Ross. Aff. Ex. G) at 23-24; Ross Aff. Ex. I at Attach. A. Ralph Gross ("Gross"), SPS's president, avers that SPS mistakenly believed that the St. Paul CBA was similar to the CBA between SPS Companies, Inc. of Minneapolis and the Union (the "Minneapolis CBA"). Gross Aff. ¶ 5. The Minneapolis CBA expressly requires SPS to pay retired employees' premiums. Ross Aff. Ex. F at 12. In July 2006, SPS determined that the St.

---

[3] The Court will follow the parties' practice of referring to "retired employees" and "early retirees" interchangeably.

Paul CBA did not obligate SPS to pay the premiums of retired employees. Gross Aff. ¶ 6. In August 2006, SPS notified the Fund that SPS would no longer make premium payments for retired employees. Id.

On January 17, 2007, the Fund initiated this litigation under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which permits ERISA plan fiduciaries, such as the trustees of the Fund, to bring a civil action to enforce the terms of a plan. Compl. The Fund claims that SPS violated ERISA § 515, 29 U.S.C. § 1145,[4] by failing to make premium payments on behalf of retired employees as required by the St. Paul CBA. Id. The Fund seeks damages of $11,142.83, interest, and attorney's fees. Id. at 2. SPS has asserted counterclaims of restitution and unjust enrichment. Ans. [Docket No. 2]. SPS seeks to recover the premium payments it made on behalf of the three retired employees. Id. SPS avers it made $34,271 in premium payments for retired employees from March 2004 through March 2007. Gross Dep. Ex. I at Attach. A. SPS has not yet determined the amount of premium payments it made before March 2004. Def.'s Mem. at 5 n.8.

### III. DISCUSSION

**A.     Standard of Review**

Federal Rule of Civil Procedure 56 provides that summary judgment shall issue "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

---

[4] ERISA § 515 states that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

law."  Fed. R. Civ. P. 56; see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig, 54 F.3d at 470.  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      The Fund's ERISA § 515 Claim Against SPS**

SPS argues it is entitled to summary judgment on the Fund's ERISA § 515 claim because as a matter of law the St. Paul CBA does not include an obligation of SPS to pay retired employees' insurance premiums.  Whether a collective bargaining agreement is ambiguous is a question of law.  Cent. States, Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co., 919 F.2d 1343, 1350 (8th Cir. 1990).  "An ambiguity exists when a contract is reasonably susceptible of more than one construction."  Ehrhardt v. Penn. Mut. Life Ins. Co., 902 F.2d 664, 667 (8th Cir. 1990).  "In ascertaining whether a contract is reasonably susceptible of more than one construction, words are to be given their plain and ordinary meaning as understood by a reasonable, average person."  Cent. States, 919 F.2d at 1350.  Courts are reluctant to infer a binding obligation in an ERISA benefit plan "absent some language that itself reasonably supports that interpretation."  Joyce v. Curtiss-Wright Corp., 171 F.3d 130, 136 (2d Cir. 1999); see also Green v. Holland, 480 F.3d 1216, 1223 (11th Cir. 2007).

The Court finds as a matter of law that Article 10 of the St. Paul CBA does not require SPS to pay insurance premiums for retired employees.  Article 10 specifically obligates SPS to

pay insurance premiums for active full-time employees and employees in the first six months of injury leave. Ross. Aff. Ex. C at 12. However, Article 10 does not include an obligation of SPS to pay the premiums for early retirees. Instead, Article 10 provides that early retirees "may" remain covered for a certain period of time, and that their coverage "shall be the same as though they had remained active employees, except that their coverage shall not include dental or vision coverage." Id. That Article 10 expressly obligates SPS to pay premiums for full-time employees and employees on injury leave, but fails to do so regarding retired employees, makes it unreasonable to conclude that Article 10 impliedly obligates SPS to pay retired employees' premiums. Therefore, Article 10 has no requirement that SPS pay retired employees' premiums.

Arguing against this result, the Fund contends that SPS is impliedly obligated to pay premiums for early retirees because the St. Paul CBA "does not state that [early retirees] may remain [covered] only if they make self-payments." Pls.' Opp'n at 5. The Fund also argues that it is illogical for Article 10 of the St. Paul CBA to exclude retirees from dental and vision coverage if retirees are required to pay for their own premiums. These arguments fail to overcome the plain language of Article 10 that expressly obligates SPS to pay premiums for full-time employees and employees in the first six months of injury leave, yet fails to impose such an obligation regarding retired employees.

The Fund also cites the fact that the 1985 St. Paul CBA provides for a delay of almost two years before early retirees could receive insurance coverage. The Fund asserts that "[p]rior to April 1, 1987, all retirees had the self-pay option to continue their coverage through the Fund, therefore, the only logical reason for a delayed effective date is that it changed the status quo, i.e. SPS would start to pay for retiree coverage after April 1, 1987." Pls.' Opp'n at 6. However, the

6

Fund fails to cite any evidence regarding the reason for the delayed effective date. See Krenik, 47 F.3d at 957 (stating that the party opposing summary judgment may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial"). Regardless, the Fund's speculative argument does not overcome the absence of language obligating SPS to pay retirees' premiums.

The Fund also conclusorily asserts there is a "general understanding [that] providing coverage also mean[s] paying premiums for such coverage." Pls.' Opp'n at 6. However, the Fund cites no evidence in the record or case law that demonstrates the existence of a general understanding between employers and unions that whenever a collective bargaining agreement refers to insurance coverage, the employer pays the premiums for the coverage.

Because there is no ambiguity in Article 10 of the St. Paul CBA, it is unnecessary to address the Fund's arguments regarding extrinsic evidence of the parties' intent. However, the Court will briefly do so. The Fund argues that SPS's payment of early retirees' premiums for six years demonstrates that SPS understood the St. Paul CBA to require such payments. However, fifteen years elapsed between the 1985 St. Paul CBA and the commencement of the payments in 2000, and Gross avers that SPS mistakenly believed that Article 10 of the St. Paul CBA was identical to the corresponding provision in the Minneapolis CBA. Gross Aff. ¶ 5. SPS's payments shed no light on whether the parties reached a meeting of the minds in 1985 regarding premium payments for retired employees.

The Fund next argues that the existence of a fact issue is supported by Gerdesmeier's intent in 1985 that the St. Paul CBA and the Minneapolis CBA have equivalent provisions. However, Gerdesmeier's privately held intent does not change the fact that the Minneapolis

7

CBA expressly obligates the employer to make premium payments for retired employees whereas the St. Paul CBA does not.

The Fund also contends that Gerdesmeier's 1991 notes regarding CBA negotiations show that the parties intended for SPS to pay the insurance premiums of early retirees. Gerdesmeier's notes state: "[A]rt. 10 - clean up lang[uage]. Co[mpany] to pay for retirees." Ross Aff. Ex. K. However, the parties failed to modify Article 10 to impose this obligation on SPS.

The Court finds as a matter of law that the St. Paul CBA does not impose an obligation on SPS to pay insurance premiums for early retirees. Therefore, SPS's Motion for Summary Judgment is granted regarding the Fund's ERISA § 515 claim.

**C.     SPS's Counterclaim**

SPS has asserted counterclaims of federal common law restitution and unjust enrichment. SPS seeks to recover the amount of the insurance premiums it mistakenly paid for the early retirees. The Fund argues that ERISA § 403(c)(2)(A)(ii), 29 U.S.C. § 1103(c)(2)(A)(ii), governs SPS's counterclaims.[5] However, the Eighth Circuit has recognized "that an employer has a federal common law action for restitution of mistakenly made payments to an ERISA plan." Young Am. v. Union Cent. Life Ins. Co., 101 F.3d 546, 548 (8th Cir. 1996). Therefore, ERISA § 403 does not govern SPS's counterclaims.

"Restitution is granted when the remedy is equitable under the circumstances." Id. SPS asserts that it would be inequitable to allow the Fund to retain SPS's mistaken premium payments. In response, the Fund argues that restitution would be inequitable because the Fund

---

[5] Section 403(c)(2)(A)(ii) permits, but does not require, a multiemployer plan to return an employer's contribution or payment "within 6 months after the plan administrator determines that the contribution was made by . . . a mistake [of fact or law]." 29 U.S.C. § 1103(c)(2)(A)(ii).

applied SPS's premium payments to purchase insurance for the early retirees, and the Fund cannot recover this money from the insurance company or the retirees. The six-year duration of the mistaken payments, and the ease with which SPS could have avoided its mistake, weigh against awarding restitution. Any financial impact on the Fund's ability to meet its ongoing commitments to plan participants would also weigh against awarding restitution. On this record, there is a genuine issue of material fact regarding whether an award of restitution would be equitable. Therefore, SPS's Motion for Summary Judgment on its federal common law counterclaims is denied.

**D.      SPS's Request that the Court Strike the Fund's Brief**

Local Rule 7.1(b)(2) states that a party responding to a dispositive motion must file its brief at least twenty days before the date of the hearing. The Fund filed its brief on November 12, 2007, which was seventeen days before the November 29 hearing date. The Fund filed its brief without any explanation for the delay and without moving for leave to file beyond the time permitted by the local rules. Pursuant to Local Rule 7.1(d), SPS requests that the Fund's brief be stricken from the record or that the Court award reasonable attorney's fees. Def.'s Reply [Docket No. 22] at 2 n.1. Although the Court denies SPS's request, the Court reminds the Fund and its counsel of their obligation to comply with the deadlines established by the Local Rules.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant SPS Companies, Inc.'s Motion for Summary Judgment [Docket No. 13] is **GRANTED IN PART AND DENIED IN PART**.

BY THE COURT:

S/Ann D. Montgomery

ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: January 29, 2008